THOMPSON, Presiding Judge.
 

 Howard S. Ross appeals from the judgment of the Marshall Circuit Court denying his attempt to redeem certain real property that Jeri'y Rogers and Robbie Rogers had purchased at a foreclosure sale. For the reasons stated herein, we reverse and remand.
 

 In 2000, Ross sold a tract of property located in Madison County (“the Madison County property”) to Geoffrey Pierce and Cherie Pierce. The sales price was approximately $100,000. To cover this price, the Pierces made a down payment to Ross of $1,000, assumed an existing mortgage loan on the property for which Ross was responsible, and executed two promissory notes in favor of Ross.
 
 [1]
 
 One of the notes, for an amount not disclosed in the record, was secured by a second mortgage on the Madison County property. The other note, for the amount of $17,000, was secured by a second mortgage on property located in Marshall County that the Pierces owned (“the Marshall County property”). The $17,000 note provided that no interest would accrue on the note and no payments would be made on the note until the Pierces sold or conveyed the Marshall County property or defaulted on the note secured by the Madison County property, at which time the $17,000 note would become due and payable. The $17,000 note included a handwritten provision that stated: “The payoff of this mortgage shall be used to reduce the balance of the mortgage of the property in Madison County of even date by $17,000.” The mortgage on the Marshall County property securing the $17,000 note was junior to a preexisting mortgage on that property.
 

 In 2001, after the Pierces failed to make payments to Ross on the Madison County property, Ross foreclosed on the mortgage covering that property. At the foreclosure sale, which Ross conducted on August 14, 2001, Ross purchased the Madison County property for $100 and the reassumption of the first mortgage loan on the Madison County property. There was no evidence presented at trial regarding the value of the Madison County property at the time of the foreclosure sale, although there was testimony that the Pierces, while they had lived in the house on the Madison County property, had done substantial damage to the house. Ross did not foreclose on the mortgage on the Marshall County property securing the $17,000 promissory note at that time. In 2005, Ross sold the Madison County property for $115,000.
 

 In 2004, Provident Bank, which owned the first mortgage on the Marshall County property, foreclosed on that mortgage. On June 28, 2004, the Rogerses purchased
 
 *1163
 
 that property at the foreclosure sale for $19,901. Shortly thereafter, they purchased the Pierces’ right to redeem that property and began making repairs and improvements to the property.
 

 On April 11, 2005, Ross indicated in a letter to the Rogerses that, by virtue of his junior mortgage on the Marshall County property, he intended to redeem that property.
 
 [2]
 
 Pursuant to § 6-5-252, Ala.Code 1975, he requested a statement from the Rogerses listing the amount they had paid for the property and any lawful charges they claimed regarding the property.
 
 [3]
 
 The Rogerses responded by providing a statement of the purchase price and what they contended were the legal charges relating to the property, which, together, totaled $39,168.55. In a letter dated June 10, 2005, Ross responded that he wished to verify the statement of charges the Rog-erses had submitted, requested that they provide receipts verifying the charges, and appointed a referee to determine the proper value of the charges pursuant to § 6-5-254, Ala.Code 1975.
 
 [4]
 

 
 *1164
 
 On June 27, 2005, Ross filed an action against the Rogerses alleging, among other things, that he could not reasonably determine the amount necessary to redeem the Marshall County property. He sought a judgment from the trial court excusing him for failure to tender the amount necessary to redeem the property, preserving his right to redeem the property, determining the amount necessary to redeem the property, and granting any further appropriate relief. After the Rog-erses failed to file an answer to Ross’s complaint, the trial court entered a default judgment against them on March 15, 2006. That judgment provided that Ross was entitled to redeem the property, set the amount necessary to redeem the property at $22,581, and ordered the Rogerses to execute a quitclaim deed conveying the property to Ross. Ross thereafter inter-pleaded the $22,581 into the court, alleging that the Rogerses had failed to execute a quitclaim deed for the property as required by the default judgment.
 

 On July 13, 2006, the Rogerses filed a motion to set aside the default judgment pursuant to Rule 60(b)(1), Ala. R. Civ. P., which the trial court granted. On May 19, 2008, the trial court held a bench trial. At the beginning of the trial, the Rogerses moved to amend their answer
 
 [5]
 
 by adding what they indicated was an affirmative defense that the $17,000 promissory note executed by the Pierces in favor of Ross and secured by the mortgage on the Marshall County property had been extinguished when Ross purchased the Madison County property at the foreclosure sale on August 14, 2001. Ross objected to the amendment. The trial court construed the proposed amendment to the answer as one asserting the defense of payment and the defense of failure of consideration. The trial court held that the former defense could be asserted under a general denial rather than as an affirmative defense and that, therefore, amendment of the answer was not necessary to assert that defense. The trial court held that the latter defense constituted an affirmative defense, and it allowed the Rogerses to amend their answer to add that defense.
 

 During the bench trial, Ross testified that the Pierces did not make any payments on the $17,000 promissory note. He stated that he could not remember the exact price for which he had sold the Madison County property to the Pierces but that it was around $100,000. He testified that the Pierces had planned to sell the Marshall County property before purchasing the Madison County property and that they were supposed to pay Ross $17,000 from the proceeds of that sale as part of the purchase price of the Madison County property. The Pierces were unable to sell the Marshall County property, however, and, as a result, they were unable to pay Ross the agreed $17,000 at the time of them purchase of the Madison County property. Ross testified that, in lieu of the $17,000 down payment, he agreed to take a $17,000 promissory note secured by the Marshall County property, with the note not becoming due until the Pierces sold or
 
 *1165
 
 otherwise conveyed the Marshall County property.
 

 Ross testified that he did not foreclose on the mortgage on the Marshall County property at the time that he foreclosed on the mortgage on the Madison County property because, Ross stated, in order to convince the Pierces to leave the Madison County property after foreclosure, he had told the Pierces that, if they would return to the Marshall County property, he would not foreclose on his mortgage on that property for as long as they continued living there. Ross testified that, at the time he foreclosed on his mortgage on the Madison County property, the first mortgage on that property, which he reas-sumed upon purchasing the Madison County property at the foreclosure sale, had a balance of approximately $60,000. Ross testified that he no longer had the promissory note that was secured by the Madison County property and that he could not recall the value of that note. He still had possession of the $17,000 promissory note secured by the Marshall County property, however, and it was entered into evidence as an exhibit.
 

 Other witnesses testified at the bench trial as well, but none of their testimony contradicted the portions of Ross’s testimony set forth above.
 

 On July 14, 2008, the trial court entered a judgment that, in addition to making findings of fact, read:
 

 “After careful consideration of the evidence the Court finds that [Ross] has failed to convince the Court that he is entitled to the relief sought in two respects:
 

 “A. If [Ross]’s complaint is construed to be a complaint brought pursuant to Alabama Code Section 6-5-255, Section 6-5-256 requires the Court to settle and adjust the equities of the parties.[
 
 6
 
 ] It appears the Rogerses would have a superior right of redemption obtained from the Pierces and there was insufficient evidence at trial to balance the equities between the parties.
 

 “B. Ross has failed to convince the Court there was any balance due on his Madison County second mortgage foreclosed by him on August 14, 2001, and thus any remaining indebtedness on the mortgage which is the subject of this action. Any ambiguities in the documents dated September 1, 2000, are to be construed against Ross who drafted the documents.
 

 “C. [Ross] having failed to satisfy this Court he is entitled to the relief sought, said request is DENIED and he is entitled to a return by the Clerk to him of the $22,5[8]1.00 paid into Court.”
 

 Following the denial of his postjudgment motion, Ross filed a timely notice of appeal to the supreme court, which transferred the appeal to this court pursuant to § 12-2-7, Aa.Code 1975.
 

 
 *1166
 
 In
 
 Robinson v. Evans,
 
 959 So.2d 634, 637 (AIa.2006), our supreme court stated the following with regard to the appropriate standard of review of a judgment following a bench trial:
 

 “The evidence in this case was presented to the trial judge in a bench trial. ‘ “When a judge in a nonjury case hears oral testimony, a judgment based on findings of fact based on that testimony will be presumed correct and will not be disturbed on appeal except for a plain and palpable error.” ’
 
 Smith v. Muchia,
 
 854 So.2d 85, 92 (Ala.2003) (quoting
 
 Allstate Ins. Co. v. Skelton,
 
 675 So.2d 377, 379 (Ala.1996)); see also
 
 First Nat’l Bank of Mobile v. Duckworth,
 
 502 So.2d 709 (Ala.1987). As this Court has stated,
 

 “ ‘ “The
 
 ore terms
 
 rule is grounded upon the principle that when the trial court hears oral testimony it has an opportunity to evaluate the demeanor and credibility of witnesses.”
 
 Hall v. Mazzone,
 
 486 So.2d 408, 410 (Ala.1986). The rule applies to “disputed issues of fact,” whether the dispute is based entirely upon oral testimony or upon a combination of oral testimony and documentary evidence.
 
 Born v. Clark,
 
 662 So.2d 669, 672 (Ala.1995). The
 
 ore terms
 
 standard of review, succinctly stated, is as follows:
 

 “ ‘ “[W]here the evidence has been [presented] ore tenus, a presumption of correctness attends the trial court’s conclusion on issues of fact, and this Court will not disturb the trial court’s conclusion unless it is clearly erroneous and against the great weight of the evidence, but will affirm the judgment if, under any reasonable aspect, it is supported by credible evidence.” ’
 

 “Reed v. Board of Trs. for Alabama State Univ.,
 
 778 So.2d 791, 795 (Ala. 2000) (quoting
 
 Raidt v. Crane,
 
 342 So.2d 358, 360 (Ala.1977)). However, ‘that presumption [of correctness] has no application when the trial court is shown to have improperly applied the law to the facts.’
 
 Ex parte Board of Zoning Adjustment of Mobile,
 
 636 So.2d 415, 417 (Ala.1994).”
 

 Ross contends that the trial court erroneously placed on him the burden of proving, in effect, that the $17,000 promissory note had not been satisfied as a prerequisite to exercising his right as a junior mortgagee to redeem the Marshall County property. Specifically, he argues, the Rogerses’ defense that the $17,000 promissory note had been paid and was satisfied such that it could not support the mortgage on the Marshall County property was an affirmative defense for which the Rog-erses’ bore the burden of proof. He argues that the Rogerses failed to carry that burden at trial. We agree.
 

 There was no dispute at trial regarding whether Ross’s mortgage on the Marshall County property or the $17,000 promissory note that it secured had, at least at one time, constituted valid and enforceable instruments. Instead, the Rogerses asserted that the promissory note had been satisfied and that, as a result of that satisfaction, the mortgage was no longer supported. Such an assertion constitutes an affirmative defense to the enforcement of the mortgage and the powers granted thereunder. Not only does Rule 8(c), Ala. R. Civ. P., state that the defenses of “payment” and “failure of consideration,” both of which the trial court found the Rogers were asserting, constitute affirmative defenses, our supreme court has stated, in the analogous situation of when a mortgagee seeks to exercise its foreclosure rights under a mortgage, that the mortgagor’s defense that the promissory note secured by the
 
 *1167
 
 mortgage had been satisfied, thus rendering the mortgage inoperative, constitutes an affirmative defense.
 
 See Adams v. Baker,
 
 268 Ala. 256, 258, 105 So.2d 703, 704 (1958). As to the burden of proof with regard to an affirmative defense, our supreme court has stated that “[t]he proponent of an affirmative defense ‘bears the burden of proving the essential elements of his affirmative defenses.’ ”
 
 Ex parte Ramsay,
 
 829 So.2d 146, 152 (Ala.2002) (quoting
 
 Ex parte Blue Cross & Blue Shield of Alabama,
 
 773 So.2d 475, 478 (Ala.2000)).
 
 See also McCullough v. McCullough,
 
 247 Ala. 286, 288, 24 So.2d 123, 124 (1945) (holding that a mortgagor “who claims credits on or full payment of the mortgage indebtedness [ ] has the burden to establish it by satisfactory evidence ....”).
 

 Furthermore, our supreme court has held that when the obligee under a promissory note is in possession of that note and the note has not been canceled, there is a rebuttable presumption that the debt evidenced by the note has not been paid.
 
 McCary v. Crumpton,
 
 267 Ala. 484, 488, 103 So.2d 714, 717 (1958).
 
 See also McCullough,
 
 247 Ala. at 288, 24 So.2d at 124 (“[T]here is a rebuttable presumption that the debt [on a mortgage] has not been satisfied where, as here, [a] twenty-year period has not elapsed and the obligee is in the possession of the uncancelled obligation.”). Although a presumption does not, in a strict sense, constitute evidence, a presumption is “ ‘[a] legal inference or assumption that a fact exists,’ ” and its effect is to cast on the party against whom the presumption operates the burden of producing evidence negating the presumption.
 
 Bean Dredging, L.L.C. v. Alabama Dep’t of Revenue,
 
 855 So.2d 513, 518 (Ala.2003) (quoting
 
 Blank’s Law Dictionary
 
 1203 (7th ed.1999)). The presumption arising from Ross’s possession of the uncancelled $17,000 promissory note in the present case, thus, had the same effect as the fact that the Rogerses’ defenses of payment and failure of consideration constituted affirmative defenses: the Rogerses bore the burden of producing evidence demonstrating that the $17,000 promissory note had been satisfied.
 

 Our review of the record discloses no evidence demonstrating that the promissory notes the Pierces executed in favor of Ross were satisfied. The only evidence of any payments on either of the notes was Ross’s purchase of the Madison County property at the foreclosure sale. That purchase yielded a payment of $100 on the promissory note secured by the mortgage on the Madison County property;
 
 [7]
 
 the purchase did not yield any payment on the $17,000 promissory note. Although it is true that, four years after purchasing the Madison County property for the first-mortgage reassumption and $100, Ross sold the Madison County property for $115,000, no profit that Ross made from that later sale was required to be credited to either of the promissory notes; for any such sale to have resulted in a credit to the promissory notes, the sale must have occurred during the Pierces’ redemptive pe
 
 *1168
 
 riod for the Madison County property, which expired one year after Ross purchased it at the foreclosure sale.
 
 See Springer v. Baldwin County Fed. Sav. Bank,
 
 562 So.2d 138, 139-40 (Ala.1989). There being no evidence of any other payments credited to either of the Pierces’ promissory notes, we conclude that the Rogerses failed to carry their burden of proving that the $17,000 promissory note had been satisfied.
 

 The Rogerses advance, for the first time on appeal, the contention that Ross created an artificial deficiency on the promissory note secured by the Madison County property when he purchased that property at the foreclosure sale for $100 and the reassumption of the first mortgage on the property.
 
 [8]
 
 Our review of the record discloses no evidentiary support for this assertion. Particularly lacking from the record is any evidence of the value of the Madison County property at the time of the foreclosure sale, a necessary factual predicate for any determination as to whether the price Ross paid at the foreclosure sale (which included his reassumption of a mortgage debt that, he testified, had an approximate balance of $60,000) “was so inadequate as to raise a presumption of fraud, unfairness, or culpable mismanagement” on the part of Ross.
 
 Breen v. Baldwin County Fed. Sav. Bank,
 
 567 So.2d 1329, 1333 (Ala.1990).
 
 [9]
 
 As a result, the Rogerses argument in this regard is without merit.
 

 Ross also contends that the other basis for the trial court’s judgment, that the Rogerses possessed a right to redeem the Marshall County property that was senior to Ross’s right to redeem the property, provided no basis for preventing Ross’s redemption of the property. He argues that, although the Rogerses purchased the Pierces’ redemption rights with regard to the Marshall County property, they never exercised that right, and, as a result, it came to an end one year after the Rogerses purchased the Marshall County property at the foreclosure sale. We agree.
 

 Section 6-5-248(b) provides that a person or entity that possesses a right to redeem property must exercise that right within one year following the date the property to which the redemption right is related is sold at the foreclosure sale. In the present case, the Rogerses purchased the Marshall County property at the foreclosure sale on June 28, 2004. A few days later, they purchased from the Pierces the Pierces’ right to redeem that property. The Rogerses never exercised their right
 
 *1169
 
 to redeem, and it expired on June 28, 2005. Because the Rogerses never exercised their right to redeem the property, there is no basis to conclude that Ross was somehow estopped or foreclosed from asserting his right to redeem the property.
 
 [10]
 
 As a result, the trial court erred when it determined that the Rogerses’ expired redemption right barred Ross’s exercise of his right to redeem the Marshall County property. Given this conclusion, we further conclude that there was no basis for the trial court’s additional holding that “there was insufficient evidence at trial to balance the equities between the parties” as required by § 6-5-256.
 

 Based on the foregoing, we conclude that the trial court erred when it held that Ross was not entitled to exercise his right of redemption by virtue of holding a junior mortgage as to the Marshall County property. For this reason, we reverse the trial court’s judgment and remand the cause for further proceedings consistent with this opinion.
 
 [11]
 

 REVERSED AND REMANDED.
 

 PITTMAN, THOMAS, and MOORE, JJ., concur.
 

 BRYAN, J., concurs in the result, without writing.
 

 [1]
 

 . On appeal, the Rogerses contend that the Pierces did not assume the existing mortgage loan on the Madison County property as part of the Pierces’ payment for that property. In its final judgment, however, the trial court found, implicitly, that the Pierces did, in fact, assume the existing mortgage loan on the Madison County property when they purchased that property. That finding is supported by substantial evidence submitted at trial.
 

 [2]
 

 . Section 6-5-248, Ala.Code 1975, provides that a junior mortgagee may redeem property covered by its mortgage within one year following the sale of the property at foreclosure.
 

 [3]
 

 . Section 6-5-252 provides:
 

 "Anyone desiring and entitled to redeem may make written demand of the purchaser or his or her transferees for a statement in writing of the debt and all lawful charges claimed by him or her, and such purchaser or their transferees shall, within 10 days after such written demand, furnish such person making the demand with a written, itemized statement of all lawful charges claimed by him or her. The redeeming party must then tender all lawful charges to the purchaser or his or her transferee. If the purchaser or his or her transferee fails to furnish a written, itemized statement of all lawful charges within 10 days after demand, he or she shall forfeit all claims or right to compensation for improvements, and the party so entitled to redeem may, on the expiration of the 10 days, file his or her complaint without a tender to enforce his or her rights under this article and file a lis pendens with the probate court.
 

 "Tender or suit must be made or filed within one year from foreclosure.”
 

 [4]
 

 . Section 6-5-254 provides:
 

 "(a) Any person offering to redeem must pay to the then holder of the legal title the value of all permanent improvements made on the land since the sale, and if the holder of the legal title cannot be ascertained, payment may be made to the circuit court of the county having jurisdiction of the subject matter when the complaint is filed to redeem. In response to written demand made under Section 6-5-252, the then holder of the legal title shall, within 10 days from the receipt of such demand, furnish the proposed redemptioner with the amount claimed as the value of such permanent improvements; and within 10 days after receipt of such response, the proposed redemptioner either shall accept the value so stated by the then holder of the legal title or, disagreeing therewith, shall appoint a referee to ascertain the value of such permanent improvements and in writing notify the then holder of the legal title of his or her disagreement and of the fact and name of the referee appointed by him or her. Within 10 days after the receipt of such notice, the then holder of the legal title shall appoint a referee to ascertain the value of the permanent improvements and advise the proposed redemptioner of the name of the appointee. The two referees shall, within 10 days after the then holder of the legal title has appointed his or her referee, meet and confer upon the award to be made by them. If they cannot agree, the referees shall at once appoint an umpire, and the award by a majority of such body shall be made within 10 days after the appointment of the umpire and shall be final between the parties.
 

 "(b) If a person offering to redeem fails or refuses to nominate a referee as provided in subsection (a) of this section, he or she must pay the value put upon the improvements by the then holder of the legal title. If the then holder of the legal title fails or refuses to appoint a referee, as provided in subsection (a) of this section, the then holder of the legal title shall forfeit his or her claim to compensation for such improve
 
 *1164
 
 ments. The failure of the referees, or either of them, to act or to appoint an umpire shall not operate to impair or to forfeit the right of either the proposed redemptioner or of the then holder of the legal title in the premises; and, in the event of failure without fault of the parties to effect an award, the appropriate court shall proceed to ascertain the true value of such permanent improvements and enforce the redemption accordingly.”
 

 We do not, as part of this appeal, make any determination with regard to whether and to what extent either party complied with the mandates of § 6-5-254.
 

 [5]
 

 . The record does not contain the Rogerses’ initial answer to the complaint.
 

 [6]
 

 . Section 6-5-255 provides:
 

 "If the purchaser or his or her vendee or transferee fails or refuses to reconvey to such party entitled and desiring to redeem such title as the party acquired by the sale and purchase, such party so paying or tendering payment shall thereupon have the right to file in the circuit court having jurisdiction thereof a complaint to enforce his or her rights of redemption.”
 

 Section 6-5-256 provides:
 

 "Upon the filing of any complaint as provided in these sections and paying into court the amount of purchase money and the interest necessary for redemption and all lawful charges, if the written statement thereof has been furnished or, if not furnished, offering to pay such debt or purchase price and all lawful charges, the circuit court shall take jurisdiction thereof and settle and adjust all the rights and equities of the parties, as provided in this article.”
 

 [7]
 

 . The Rogerses appear to assert, based on the language in the $17,000 promissory note indicating that full payment of that note would "be used to reduce the balance of the mortgage of the property in Madison County of even date by $17,000,” that the $17,000 promissory note would be considered satisfied if the promissory note secured by the Madison County property was satisfied. We are not convinced that the cited language in the $17,000 promissory note has any such meaning. Assuming that it does, however, the language certainly indicates that the other promissory note bore a value of at least $17,000, and there was no evidence of any payment on that other note other than the $ 100 that Ross paid at the foreclosure sale.
 

 [8]
 

 . The Rogerses contend that the portion of Ross’s purchase of the Madison County property at the foreclosure sale constituted by his reassumption of the first mortgage was "a sham” because he testified at trial that he had continued to make the payments on that mortgage after he had sold the property to the Pierces. The trial court's finding that part of Ross's purchase of the Madison County property at the foreclosure sale involved his reas-sumption of the first mortgage on that property was supported by the evidence.
 
 See
 
 note 1, supra.
 

 [9]
 

 . Furthermore, we are not at all convinced that, even if the amount Ross paid for the Madison County property created "a presumption of fraud, unfairness, or culpable mismanagement,”
 
 see Breen,
 
 567 So.2d at 1333, the appropriate remedy would have been to judicially declare both promissory notes satisfied. The proper remedy appears to be the setting aside of the foreclosure sale, a remedy that no party has sought in the present case.
 
 See Breen,
 
 567 So.2d at 1333 (" 'The general rule is that, "where the price realized at the [foreclosure] sale is so inadequate as to shock the conscience, it may itself raise a presumption of fraud, trickery, unfairness, or culpable mismanagement, and therefore be sufficient ground for setting the sale aside.” ' " (quoting
 
 Hayden v. Smith,
 
 216 Ala. 428, 430-31, 113 So. 293 (1927))).
 

 [10]
 

 . We are not here presented with a case in which holders of competing rights to redeem the same real property have each sought to exercise their rights. We do not address the appropriate outcome of such a situation.
 

 [11]
 

 . In his appellate briefs, Ross raises further contentions regarding the amount of money the trial court should require him to pay to redeem the Marshall County property. Those matters, which require factual determinations, are appropriately left for the trial court's consideration on remand.